BUTTS, Justice.
 

 This is an appeal from a summary judgment entered in favor of the plaintiffs, Fred Bruni, Ernest Bruni, and Ernesto Ramirez, as Trustees under the Bruni Mineral Trust (“Trust”).
 

 In 1974, the Trust, as lessor, drafted and entered into an oil and gas lease with the defendants, as lessee.
 
 [1]
 
 At the time the lease was executed, Killam and Hurd operated as a partnership under the name of Killam & Hurd, Ltd. That relationship ended, and the lease was subsequently assigned to Killam Oil and to Hurd Enterprises, with each entity owning a one half interest. The lessees completed nine producing gas wells on the leased premises. The gas produced from two wells was sold to a pipeline under a Gas Purchase Contract (“the Contract”) executed on November 24, 1981, between the lessees, as seller, and United Texas Transmission Company (“UTTCO”), as buyer. Under the contract, UTTCO was entitled to make up payments within five contract years for gas not taken.
 

 The Gas Purchase Contract contained a “take-or-pay” provision obligating UTTCO either to take a specified annual quantity of gas or pay Killam and Hurd for the gas not taken. In 1986, Killam sued UTTCO when it failed to either take or pay for the minimum quantity as required under the contract. Hurd settled without suit for $2.8 million and Killam settled for $4 million. Each recovered the same amount after costs, expenses, and attorney fees were deducted.
 

 The Trust sued Hurd and Killam seeking a royalty share of the settlement proceeds received from UTTCO. The Trust alleged four alternative claims in its petition. The Trust first alleged a breach of marketing duty, breach of duty of good faith and fair dealing, conversion, and fraud. The second claim was that the Trust was entitled to a royalty share because the take-or-pay provisions constituted a constructive sale of the gas. In the next two claims, the Trust alleged unjust enrichment and equitable reformation, respectively. Both sides moved for summary judgment, the issue being whether the Trust was entitled to receive a royalty portion of the take-or-pay settlement proceeds. The trial court granted summary judgment in favor of the Trust
 
 *266
 
 determining that the Trust had the right to collect a royalty share, thereby concluding that, as a matter of law, the gas royalty clause was applicable to the settlement payment. The judgment was by severance.
 
 [2]
 
 Both Killam and Hurd appealed.
 

 Killam and Hurd argue that under the terms of the lease and Texas law the Trust was not entitled to royalty on the settlement arising from UTTCO’s breach of the “take-or-pay” provision of the contract.
 

 Hurd brings four points of error: under the Bruni lease royalty is not due on payments for gas not produced and sold; case law holds that producers owe no royalty on take-or-pay payments; the trial court erred in denying Hurd’s motion for summary judgment because Hurd had no liability to pay royalties on take-or-pay payments under the express terms of the Bruni lease; and, the trial court erred in granting summary judgment that Hurd owed royalty on payments made to settle take-or-pay liability arising from a contract between the producers and the pipeline covering the Bruni lease. Killam raises three points of error asserting that the court: erroneously granted the Trust’s motion for summary judgment; erred in ruling as a matter of law that the Trust was entitled to a royalty share of the settlement received by Killam; and erroneously denied Killam’s motion for summary judgment because, as a matter of law, the royalty clause of the lease did not apply to a settlement received by Killam arising from UTTCO’s breach of the gas purchase contract.
 

 The party moving for summary judgment has the burden of showing that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c) (Vernon Supp.1990);
 
 Nixon v. Mr. Property Management Co.,
 
 690 S.W.2d 546, 548 (Tex.1985). When both parties file motions for summary judgment and one motion is granted and the other is overruled, the trial court’s judgment becomes final and appeal-able. On appeal, the court of appeals should determine all questions presented including the propriety of the order overruling the losing party’s motion for summary judgment.
 
 Mayers v. Sanchez-O’Brien Minerals Corp.,
 
 670 S.W.2d 704, 707 (Tex.App. — San Antonio 1984, writ ref’d n.r.e.) (citing
 
 Tobin v. Garcia,
 
 159 Tex. 58, 316 S.W.2d 396, 400 (1958)).
 

 The issue whether a standard royalty clause applies to settlement of a take-or-pay provision has not been directly addressed by the Texas courts. However, we are guided by the principles of law enunciated in other cases construing oil and gas leases, particularly the royalty clauses.
 

 In construing the provisions of an oil and gas lease, the court must determine the intention of the parties, as expressed in the lease.
 
 Sun Oil Co. v. Madeley,
 
 626 S.W.2d 726, 727-28 (Tex.1981). Unless a conflict or ambiguity exists, the lease alone is deemed to express the parties’ intent.
 
 Id.
 
 Extrinsic evidence cannot be considered if the lease clearly discloses the parties’ intention, or if the lease is susceptible of only one legal meaning.
 
 Schwartz v. Prairie Producing Co., Inc.,
 
 727 S.W.2d 289, 291 (Tex.App. — Houston [1st Dist.] 1987, writ ref’d n.r.e.).
 

 The royalties to which a lessor is entitled must be determined from the provisions of the oil and gas lease.
 
 Texas Oil & Gas Corp. v. Vela,
 
 429 S.W.2d 866, 870 (Tex.1968). The pertinent provision of the royalty clause in the lease involved here provides:
 

 The
 
 royalties
 
 to be paid by lessee are: ... (b) on gas, including casinghead gas and all gaseous substances,
 
 produced
 
 from said land and
 
 sold or used off the premises
 
 or in the manufacture of gasoline or other product therefrom, the market value at the mouth of the well of one-eighth of the gas so
 
 sold or used
 
 provided that on gas
 
 sold
 
 at the wells the royalty shall be one-eighth of the amount realized from such; ... (emphasis added).
 

 
 *267
 
 In
 
 Garcia v. King,
 
 139 Tex. 578, 164 S.W.2d 509 (1942), the court held that the term “produced”, as used in the lease to allow for an extension beyond the primary term, meant “produced in paying quantities”.
 
 Id.
 
 164 S.W.2d at 510, 511. The
 
 Garcia
 
 court emphasized that in order to understand and properly interpret the language used by the parties we must consider the objects and purposes intended to be accomplished by them in entering into the lease.
 
 Id.
 
 164 S.W.2d at 512. The object of a mineral lease is to secure development of the property for the mutual benefit of the parties.
 
 Id.
 
 Consequently, it has become well established under Texas law that the term “production” as used in oil and gas leases means the actual physical extraction of the mineral from the soil.
 
 See Gulf Oil Corp. v. Reid,
 
 161 Tex. 51, 337 S.W.2d 267 (1960);
 
 Rogers v. Osborn,
 
 152 Tex. 540, 261 S.W.2d 311 (1953).
 

 Killam and Hurd cite
 
 Monsanto Co. v. Tyrrell,
 
 537 S.W.2d 135 (Tex.Civ.App.— Houston [14th Dist.] 1976, writ ref d n.r.e.) and
 
 Exxon Corp. v. Middleton,
 
 613 S.W.2d 240 (Tex.1981) and maintain that royalties are not due to the lessor on settlement proceeds resulting from the breach of take- or-pay provisions in a gas purchase contract. We agree.
 

 The issue confronting the court of appeals in
 
 Monsanto
 
 was whether an advance payment for gas production constituted “recovery from production.” The oil and gas lease in
 
 Monsanto
 
 provided for the initial royalty to increase when the lessee recovered its total drilling costs from a stated percentage of production. The lessee entered into a gas purchase contract whereby the purchaser made an advance payment to the lessee as partial payment for the gas committed to the purchaser. The lessor contended that the advance payments should be applied as an immediate credit to the recovery of well costs, thereby triggering the increased royalties. The court ruled that the advance payments were not “recovery from production” and would, therefore, not be accounted for by the lessee as recovery of expenses until the gas was actually produced from the lease.
 

 The royalty clause in the leases in
 
 Exxon Corp. v. Middleton
 
 provided for royalty to be based upon a percentage of the gas produced from the land as related to either the amount realized for the sale of minerals at the well or market value if the minerals were sold off the premises. The gas was delivered to a plant within the field upon which the leases were located but not on the leased premises. The lessor contended that the gas was sold when the gas contracts became effective. That court disagreed, holding that the term “produced” as used in the lease meant a physical extraction from the land and the term “sold” meant delivered. The lessee’s obligations under the royalty clause were unaffected by its gas contracts. The court reasoned that the parties could have provided for royalties to be calculated on the amount realized for a sale off the premises, if they so intended.
 

 Recently in
 
 Diamond Shamrock Exploration Corp v. Hodel,
 
 853 F.2d 1159 (5th Cir.1988) the court ruled that gas royalty clauses [like the present one] do not apply to take-or-pay payments because “royalties are not owed unless and until actual production, the severance of minerals from the formation, occurs.”
 
 Id.
 
 at 1165.
 

 In the present case, the lease entitled the Trust to royalty payments on gas actually
 
 produced.
 
 This is not a suit by the Trust to recover royalties on the gas actually taken by UTTCO under the contract or on gas sold by Killam and Hurd on the spot market. The dispute between UTTCO and Killam and Hurd arose when UTTCO neither took the gas nor paid as required under the contract. The Trust contends that the settlement payments received by Killam and Hurd from UTTCO might have included underpayment for gas sold on the spot market. However, the gas contract was independent of the lease.
 
 Exxon Corp. v. Middleton,
 
 613 S.W.2d at 245. The Trust, as drafters of the lease, could have specifically included a provision allowing for royalties to be paid upon proceeds received by Killam and Hurd from settlements of disputes arising from a breach of
 
 *268
 
 take-or-pay provisions in gas contracts.
 
 [3]
 
 The parties knew how to and did provide for royalties to be paid based upon the gas produced and sold.
 
 See Vela
 
 429 S.W.2d at 871. In so doing, the Trust unambiguously limited its right to royalty payments only from gas actually extracted from the land. Moreover, the gas not actually produced remains in the ground and the Trust will be entitled to royalties upon the subsequent extraction.
 

 We hold, as a matter of law, that the Trust is not entitled to royalties on the settlement proceeds arising from the take- or-pay provision of the contract between Killam, Hurd, and UTTCO. Therefore, we need not address the Trust’s contention as to what the proceeds might have represented. This is because under a standard lease, take-or-pay payments do not constitute any part of the price paid for produced gas, nor do they have the effect of increasing the price paid for gas that was taken. These payments are made when gas is
 
 not produced,
 
 and as such, bear no royalty.
 

 The summary judgment granted by the trial court in favor of the Trust is reversed. Judgment in favor of Killam Oil and Hurd Enterprises is hereby rendered.
 

 [1]
 

 . The lease covered 3,808.03 acres in Webb County, Texas.
 

 [2]
 

 . The trial court denied the Trust’s motion for summary judgment on its causes of action for breach of the covenants to manage and market and breach of duty of good faith, and thereafter, severed the royalty claim into a separate cause.
 

 [3]
 

 . The summary judgment evidence established that the Trust’s present lease form contains a provision for royalty in take-or-pay payments.