cv5-759.dd.neel 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON THIRD MOTION FOR REHEARING









NO. 03-95-00759-CV







Russell H. Neel, Sr.; Russell H. Neel, Jr.; LeRoy K. Neel;


and Kathleen Neel Insall, Appellants



v.



HECI Exploration Company and Browning Oil Company, Inc., Appellees








FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 93V-279, HONORABLE DAN R. BECK, JUDGE PRESIDING







 We withdraw our previous opinion and judgment issued January 23, 1997 in this cause and
substitute the following opinion.

 Russell H. Neel, Sr.; Russell H. Neel, Jr.; LeRoy K. Neel; and Kathleen Neel Insall ("the
Neels") appeal a take-nothing summary judgment denying their claims against their mineral lessee, HECI
Exploration Company, and HECI's successor-in-interest, Browning Oil Company, Inc. The Neels sued
HECI to recover a share of HECI's judgment against AOP Operating Corporation for damage to the oil
and gas reservoir underlying the Neels' property. We will affirm the summary judgment against the claim
for royalty on lost production and will reverse and remand the remainder of the cause.


BACKGROUND


 In 1978, Russell H. Neel, Sr. leased his land in the Wilcox Field in Fayette County,
conveying the right to explore for and produce oil and reserving a royalty interest of one-sixth of all oil
produced from the land. Kathleen Neel Insall, LeRoy K. Neel, and Russell Neel, Jr. inherited their
mother's interest in the lease. HECI and Browning are successor lessees. HECI discovered and produced
oil on the leased premises and paid royalties.

 In 1985, HECI learned that AOP was producing excessively in the Wilcox Field from a
well on acreage next to the Neels' land. HECI complained to the Railroad Commission three times and
secured regulatory action to curb AOP's wrongful acts. AOP nevertheless continued to overproduce. In
1988, HECI filed Cause No. 88-1045 in district court in Fayette County alleging that AOP's
overproduction damaged the reservoir and resulted in lost reserves in HECI's well on the Neel tract. In
May 1989, the court granted HECI permanent injunctive relief against AOP, and a jury awarded HECI
$1,719,956 actual damages and $2,000,000 punitive damages. HECI executed a release of judgment in
September 1989. HECI did not inform the Neels of AOP's overproduction and did not notify them of the
legal action before, during, or after the lawsuit. The Neels did not learn of HECI's suit against AOP for
lost production until May 1993. 

 In December 1993, the Neels sued to recover a one-sixth share of HECI's judgment
against AOP. They asserted claims for breach of the contract to pay royalty on production, negligent
misrepresentation, breach of the implied covenant to protect the leasehold, an accounting, unjust
enrichment, and punitive damages.

 The trial court granted summary judgment to HECI in two stages. The court first granted
partial summary judgment on three specific points: (1) the Neels did not convey to HECI their causes of
action against AOP; (2) there was no fiduciary relationship between the Neels and HECI; and (3) the
express terms of the lease did not impose on HECI an obligation to give the Neels information affecting
their interest in the leasehold. The court later granted a multi-faceted motion for summary judgment,
disposing of all the Neels' claims against HECI without stating a specific basis. After the parties stipulated
that summary judgment would have been granted in favor of Browning had it presented such a motion at
the same time as defendant HECI, the trial court signed the final judgment on August 31, 1995.

 The Neels raise eight points of error appealing various issues. They contend that the
judgment was erroneous because (1) HECI did not prove as a matter of law that it protected the leasehold
estate as a reasonably prudent operator; (2) HECI had the right and duty to sue AOP for the Neels'
interest; (3) the Neels are entitled to a royalty share of HECI's judgment for lost production; (4) HECI is
unjustly enriched by retaining its full recovery; (5) a fact issue remains on negligent misrepresentation
regarding whether HECI should have advised the Neels about the drainage; and (6) HECI failed to prove
the statute-of-limitations bar by negating the discovery rule.


DISCUSSION AND HOLDINGS


 In reviewing a summary judgment, this Court must determine whether the movant has
shown that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). We
take as true all evidence favoring the non-movants and indulge every inference and resolve every doubt in
their favor. Id. at 548-49. When a court does not specify on which of several possible bases it renders
the summary judgment, appellants must show that no ground in the motion supports the summary judgment;
we must affirm the summary judgment if any of the theories in the motion has merit. Valles v. Texas
Comm'n on Jail Standards, 845 S.W.2d 284, 287 (Tex. App.--Austin 1992, writ denied). The
reviewing court can consider only those grounds raised by the summary-judgment motion and response. 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993).



Relationships of the parties and the oil

 To effectively assess the summary judgment, we must understand the relationships under
the lease of the parties to the oil. Before the lease, the Neels owned the oil in place underground. See
Elliff v. Texon Drilling Co., 210 S.W.2d 558, 561 (Tex. 1948). The ownership interest is limited by the
law of capture and state regulations. Id. Oil that is legally drained away and "captured" by neighboring
producers is lost to the owner. Id. at 562. The mineral owner, however, retains an interest in minerals that
are illicitly taken or wasted by illegitimate acts of neighboring producers. Id. at 563. In Elliff, the court
held that gas and distillate lost during a blowout of a neighbor's well 



[a]t the time of their removal . . . belonged to [the owners of the tract adjoining the blown-out well], and [the gas and distillate's] wrongful dissipation deprived these owners of the
right and opportunity to produce them. That right is forever lost, the same cannot be
restored, and petitioners are without an adequate legal remedy unless we allow a recovery
under the same common law which governs other actions for damages and under which
the property rights in oil and gas are vested.



Id. 

 Under the lease, the Neels conveyed their rights in the oil to HECI. See Texas Oil & Gas
Corp. v. Ostrom, 638 S.W.2d 231, 234 (Tex. App.--Tyler 1982, writ ref'd n.r.e.). HECI, therefore,
retained an interest in the oil overproduced by AOP and the oil in place rendered unproducible by that
overproduction.

 The Neels' royalty interest accorded them one-sixth of the oil produced by HECI. 
Production includes only marketable oil and gas physically extracted. Rogers v. Osborn, 261 S.W.2d
311, 312 (Tex. 1953); see also Killam Oil Co. v. Bruni, 806 S.W.2d 264, 267-68 (Tex. App.--San
Antonio 1991, writ denied). Royalty owners, however, have recovered for reduction in value to the
reserves due to the negligence of a mineral producer on an adjoining tract of land. Elliff, 210 S.W.2d at
558; Apache Corp. v. Moore, 891 S.W.2d 671, 678-680 (Tex. App.--Amarillo 1994, writ denied)
(royalty owners recovered for gas lost during gas-well blowout on neighboring property). The Neels had
a cause of action against AOP.



The lessee's duties

 In addition to the duties stated in the lease, HECI had three implied duties: to develop the
premises, to protect the leasehold, and to manage and administer the lease. See Amoco Prod. Co. v.
Alexander, 622 S.W.2d 563, 567 (Tex. 1981). A lessee must perform under the implied covenants as
a reasonably prudent operator. Id. The duty to protect the leasehold includes a duty to protect against
drainage. Id. at 568. That duty may require a reasonably prudent operator to take a number of actions,
including drilling additional wells or seeking administrative relief. Id. The operator need not take any action
that does not yield a reasonable expectation of profit. Id.

 The parties have starkly different views of the extent of HECI's duties under the implied
covenant to protect the leasehold. At one extreme, the Neels contend that HECI had to represent the
Neels' interests in the suit against AOP and that HECI's recovery against AOP is production subject to the
royalty provisions of the lease. At the other, HECI urges that it sued AOP solely to protect its own interest
in the leasehold and that it had no duty, right, or ability to represent the Neels in that suit; it argues that the
damage award is not production and, even if it were, none of it belongs to the Neels because HECI did
not represent their interests.



The causes of action

 The Neels assert several claims against HECI. They seek to recover for breach of the
implied covenant to protect the leasehold and for breach of the lease's royalty provision. They want
reimbursement for HECI's unjust enrichment. They also seek damages, actual and punitive, for negligent
misrepresentation. We will examine whether HECI has shown the causes of action to be meritless before
assessing whether they are barred by the statute of limitations.

 Breach of Contract and Implied Covenants. The Neels contend that the trial court erred
in granting the summary judgment against their claim for breach of the implied covenant to protect the
leasehold because HECI did not show that, as a matter of law, it fulfilled its duty to protect the entire
leasehold as a reasonably prudent operator (points one and four). Because the Neels urge, in part, that
HECI breached its duty by failing to sue AOP on their behalf, our discussion of these points encompasses
the assertion that HECI had the right to sue on the Neels' behalf (point three).

 HECI contends that it did everything necessary to fulfill its duty to protect the leasehold. 
It sought and obtained rulings from the Railroad Commission to protect against AOP's overproduction. 
Its application for a judicial injunction against AOP's wrongdoing also protected the entire leasehold. HECI
asserts that its damages suit, by contrast, was brought solely to protect its own interests, not the Neels'
interests. HECI relies on the absence of an assignment to justify its self-interested action; it contends that,
far from having a duty to sue for damages on the Neels' behalf, it was prohibited from representing their
interests. 

 We agree that HECI had no right to sue for damages on the Neels' behalf absent an
assignment. See Pape Equip. Co. v. I.C.S., Inc., 737 S.W.2d 397, 402 (Tex. App.--Houston [14th
Dist.] 1987, writ ref'd n.r.e.). Because there was no assignment, we overrule point of error three. This
conclusion does not end our inquiry, however, because the Neels contend that HECI failed to protect the
leasehold by failing to notify them of the suit. 

 Defining the lessee's duty regarding a suit for lost production requires delicate balancing
of interests. Damage to the reservoir injures the interests of lessor and lessee alike. A lessee who recovers
for the entire reduction in reservoir value due to the neighboring producer's misdeeds without having to
carve out a royalty share of production profits at the royalty owner's expense. A lessee who recovers for
the damage to its own interests but does nothing regarding the lessor's interest leaves the injury to that
portion of the leasehold unredressed. A lessee's suit can bind all interest holders through the principles of
res judicata or collateral estoppel. (1)
 On the other hand, a lessee cannot have a duty to sue when it lacks
the capacity to sue. Further, the lessee is not a fiduciary of the lessor; its duty is to protect the leasehold,
not the lessor. Because oil that has been drained away is no longer part of the leasehold, a narrow view
of the duty to protect the leasehold would not require the lessee to seek compensation for oil not part of
the leasehold on behalf of someone to whom the lessee owes no fiduciary duty.

 We conclude that the implied covenant to protect the leasehold is not so onerous as to
require unauthorized suits, but not so narrow as to permit utter abandonment of part of the leasehold. We
hold that a mineral lessee who determines that a suit for damages is necessary to protect the leasehold, but
lacks the power to sue for all who have interests in the leasehold, must notify the unrepresented interest-holders of the need for suit and the lessee's intent to sue. This is not a new implied duty, but a specific
means to fulfill the existing implied covenant to protect the leasehold. Our holding recognizes the lessee's
duty to protect the entire leasehold, not just its own share of the theoretic production. When a lessee
obtains an injunction to stop overproduction by a neighbor, it protects all the oil in the leasehold. A suit
to recover lost production similarly protects the leasehold by obtaining compensation for oil wrongfully
severed from the leasehold; it protects the leasehold by restoring the monetary value of the oil that is
rightfully part of the leasehold. By giving notification, lessees avoid representing interests without
authorization, but fulfill their duty to protect the entire leasehold. Notification alerts all interest-holders of
the threat to the leasehold and of the impending action that may bind them whether or not they participate. 
The interest-holders then have the option of pursuing their own action, joining the lessee's action, assigning
their interest to the lessee, or waiving their rights.

 HECI complains that, because the implied covenant arises only with production of minerals,
no implied covenant arises when a lawsuit regarding lost reserves is filed. However, HECI's right to sue
to recover for damage to the reservoir exists only because of its right to produce under the lease. As the
right to produce has concomitant responsibilities under the implied covenant, the derivative right to recover
for lost production has corollary responsibilities. HECI could not have produced oil without accounting
to the Neels for their royalty share. AOP's wrongful overproduction does not free HECI to recover
compensation for unproduced, unproducible reserves without any obligation to the remainder of the
leasehold and the Neels.

 HECI also complains that the implied covenant has arisen only in connection with matters
within the exclusive control of the lessee. Our holding is not inconsistent with that premise. The duty to
inform arises only when a mineral lessee has determined that it must sue for damages to protect its interest
in the leasehold. The lessee's decision to sue to recover damages for its lost reserves is within its exclusive
control.

 We note that a lessee's failure to notify the lessor of the suit will not always mean that the
lessee owes damages to the lessor. For instance, if the lessor independently knows of the suit or the need
for a suit, the failure to inform might not be the cause of damages to the lessor. The record's failure to show
whether the Neels sued AOP does not make the summary judgment appropriate, however. If anything,
it shows a fact issue regarding damages and mitigation of damages. On remand, HECI may show that the
Neels sued AOP and recovered fully for damages to their interest in the reservoir. That is evidence and
an issue not before us. We conclude that HECI has not established as a matter of law that it fulfilled its duty
to protect the leasehold or that any failure to notify did not harm the Neels. We sustain points one and four.

 Our conclusion does not conflict with cases holding that lessors cannot obtain a share of
the settlement of a lessee's claim on a take-or-pay agreement. In Bruni, the lessors sued for their royalty
share of a judgment the lessee obtained against its gas purchaser for refusing to either take gas or pay a fee. 
806 S.W.2d at 265. The appellate court held that the lessors were not entitled to share in the settlement
proceeds because the settlement was not based on gas produced; the court reasoned that, because the gas
remained in the ground, the lessors would receive the royalty when the gas eventually was produced and
sold. Id. at 267. In this case, by contrast, the HECI-AOP jury found that the reservoir was damaged in
a way that reduced the value of the reserves. The oil, whether illegally drained away or blocked in place
in the ground, cannot be produced, so no royalty will ever be paid on that oil. As with HECI and the
owners in Elliff, the suit for damages is the lessors' only means of recovery. See Elliff, 210 S.W.2d at
563.

 The fact that this oil will never be produced, however, requires that we reject the Neels'
contention that they are entitled to one-sixth of the recovery as a royalty. The Neels are entitled under the
lease to one-sixth of the oil produced. Texas narrowly defines "produced" as oil physically extracted from
the ground. Rogers, 261 S.W.2d at 312. HECI's recovery was expressed in terms of the reduction in
value of "HECI's reserves," not production. The source of the injury in this and the underlying HECI-AOP
case is that the damaged reserves will never be produced. The Neels are not, as a matter of law, entitled
to a share of HECI's recovery from AOP as a royalty. We overrule point of error two.

 Our holding does not foreclose using the royalty interest to measure damages in other
causes of action. See Elliff, 210 S.W.2d at 580. Because of their royalty interest in the leasehold, the
Neels may have been entitled to damages from AOP; if HECI violated its duty to protect the leasehold,
the Neels may be entitled to damages from HECI in an amount equal to the lost recovery. Because the
royalty interest establishes the Neels' interest in the leasehold, it helps define their potential injury from a
neighbor's overproduction as well as the parameters of a recovery for breach of the implied covenant to
protect the leasehold. Other factors may, of course, diminish or augment the amount of damages, if any.

 Negligent Misrepresentation. The Neels claim that HECI's failure to inform them of AOP's
overproduction and its unilateral decision to sue AOP constituted a misrepresentation. As the Neels argue
under point of error six, the motion for summary judgment did not address the negligent misrepresentation
claim. (2) We cannot consider HECI's argument that the tort of negligent misrepresentation is precluded by
the existence of the contract because we do not find that assertion in the trial record. See McConnell, 858
S.W.2d at 343. We therefore sustain point of error six.

 Unjust Enrichment. The Neels contend by point of error five that the trial court erred by
ruling against their claim for unjust enrichment. The aim of the equitable doctrine of unjust enrichment is to
redistribute benefits unfairly held by one party at the expense of the other in a situation not covered by
contract; the doctrine can apply when a contract becomes impossible. Burlington N.R.R. Co. v.
Southwestern Elec. Power Co., 925 S.W.2d 92, 97 (Tex. App.--Texarkana 1996, no writ h.). AOP's
overproduction has allegedly rendered production of the lost reserves impossible and deprived the Neels
of the benefit of the lease to that extent. HECI contends that the following summary-judgment rulings show
a lack of unjust enrichment: (1) the judgment against AOP did not award HECI damages attributable to
the interests of any other party; (2) royalties are not owed on damages awarded to HECI; and (3) the
Neels did not convey to HECI their claim against AOP. 

 The ambiguity of a term in the AOP-HECI judgment prevents us from assessing the vitality
of the Neels' claim that HECI was unjustly enriched. HECI's recovery was based on evidence regarding
and the jury's finding of the lost value of "HECI's reserves." The summary-judgment evidence to which
HECI refers does not show conclusively that HECI's expert excluded the value of the oil attributable to the
royalty interest from the calculation of HECI's damages. Rather, he testified about and the court awarded
damages based on the value of "HECI's reserves." Because under Texas law HECI owned all of the oil
in place, the plain meaning of the term "HECI's reserves" encompasses all the oil in place, including that on
which the royalty interest-holder could base a claim. The summary-judgment record does not support the
trial court's conclusion that HECI's recovery did not encompass damage to reserves attributable to the
royalty interest. We expressly do not conclude the converse (that HECI's recovery did include damages
attributable to the Neels' interests), but remand for further proceedings before the court on this issue. We
sustain point five.

 We have concluded that summary judgment on the merits was inappropriate as to the
Neels' causes of action for breach of the implied covenant to protect the leasehold, negligent
misrepresentation, and unjust enrichment. We next must decide whether the court erred by granting
summary judgment on the basis of limitations against these claims. 



Discovery Rule

 Because the Neels undisputedly filed their suit beyond the normal limitations periods, the
survival of their claims depends on application of the discovery rule. They contend by point of error seven
that the evidence did not prove the limitations bar as a matter of law and by point of error eight that the
evidence did not negate the application of the discovery rule to delay application of the statute of limitations.

 Limitations periods begin running when an injury occurs. Any injury from breach of the
implied covenant to protect the leasehold occurred when HECI filed suit against AOP in 1988 without
notifying the Neels; the negligent misrepresentation claim arises from the same act. These actions accrue
on the date of filing suit because the injury may stem from the nonrepresentation of the lessor's interests or
the deprivation of the lessor's ability to participate in or direct the lawsuit. The unjust enrichment, if any,
occurred when HECI obtained compensation from AOP--no later than when HECI released the judgment
in September 1989. The date the Neels filed this suit--December 6, 1993--is beyond even a four-year
statute of limitations on all causes of action unless the discovery rule tolled the running of the statutes.

 Application of the discovery rule now requires a two-tiered inquiry. The rule applies only
in cases satisfying the "unifying principle" that the injury be inherently undiscoverable and evidence of the
injury be objectively verifiable. Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex.
1994). The unifying-principle test is a threshold inquiry whether the discovery rule should apply in this
particular type of case. Id. at 456 (determining whether discovery rule applies to "misappropriation of
trade secret cases"). However, this initial test does not replace the traditional inquiry into the complainant's
subjective knowledge. If the case satisfies the objective unifying-principle test and the discovery rule
applies to the type of case, a court must still decide whether this particular plaintiff subjectively knew or
should have known of the injury. See id. at 455. (3) Whether someone should have known of an injury is
generally a fact question for the jury. See Hassell v. Missouri Pac. R.R. Co., 880 S.W.2d 39, 43 (Tex.
App.--Tyler 1994, writ denied).

 We note that "inherently undiscoverable" does not mean "impossible to discover" or else
the question whether to apply the discovery rule would never arise. See S.V. v. R.V., 933 S.W.2d 1, 7
(Tex. 1996). Inherent undiscoverability simply means that a duly diligent injured party would not ordinarily
learn of the negligent act or omission. Altai, 918 S.W.2d at 456 (citing Kelley v. Rinkle, 532 S.W.2d
947, 949 (Tex. 1976) ("A person will not ordinarily have any reason to suspect that he has been defamed
by the publication of a false credit report to a credit agency . . . .")). Though the discoverability test is
objective and addresses types of cases, the supreme court has looked to the facts of the case before it to
illustrate the factors present in a type of case. See Altai, 918 S.W.2d at 457.

 HECI argues that the existence of its suit against AOP was inherently discoverable. 
HECI's administrative complaints against AOP were available in the Railroad Commission's public records,
the lawsuit pleadings were available in the Fayette County district clerk's office, and news of the judgment
was published in the Fayette County weekly newspaper and a petroleum industry newsletter. The Neels
contend that, without knowledge of AOP's misdeeds, they were not required by the due-diligence standard
to scour the Railroad Commission's records; besides, those records would show only that HECI had taken
action to protect the entire leasehold. Nothing in the Railroad Commission records would reveal the lawsuit
against AOP, much less the need to represent their own interests in such a suit. Likewise, the Neels
contend that due diligence did not require them to comb through records of the Fayette County district
clerk's office looking for lawsuits that might adversely affect their interests. The Neels, who do not reside
in Fayette County, do not feel due diligence required them to read every issue of the local newspaper or
every industry publication.

 We conclude that this type of injury is inherently undiscoverable. A lessor would not
ordinarily have any reason to suspect it had been injured by its lessee's undisclosed, binding legal action. 
Duly diligent royalty owners are not required to stake out all government agencies in which their lessees
might initiate proceedings that might affect the royalty owners' interests. Nor are royalty owners required
to sift through court records in search of judgments that might benefit them. Such a requirement would
impose great burdens not only on royalty owners, but on the courts, agencies, and the non-oil interests
served by those entities. (4) This type of case is distinct from cases in which the royalty interest owners knew
facts that should have triggered knowledge of their injury. (5)

 This type of case clearly meets the second part of the unifying-principle test: the failure of
a lessee to inform the royalty interest owner of the need for a lawsuit to protect the leasehold, the
subsequent failure to share a just portion of the proceeds of such a suit, and the resultant damages are
objectively verifiable. We hold that claims of this nature are the type to which the discovery rule should
apply.

 We must now determine whether HECI has established the absence of a genuine issue of
fact regarding whether the Neels should have learned of their injuries at such a time that the statutes of
limitations expired before they filed suit. A two-year statute of limitations applies to claims for negligent
misrepresentation. Milestone Properties, Inc. v. Federated Metals Corp., 867 S.W.2d 113, 118-19
(Tex. App.--Austin 1993, no writ). A two-year statute of limitations also applies to unjust enrichment
claims. Cherokee Water Co. v. Advance Oil & Gas Co., 843 S.W.2d 132, 135 (Tex.
App.--Texarkana 1992, writ denied); Hornblower & Week-Hemphill, Noyes v. Crane, 586 S.W.2d
582, 587 (Tex. Civ. App.--Corpus Christi 1979, writ ref'd n.r.e). A four-year statute of limitations applies
to breach of implied covenant claims. Alexander, 622 S.W.2d at 571. If the statute of limitations was
tolled until actual discovery in May 1993, the Neels fit within all limitation periods by suing on December
6, 1993. The judgment thus can stand only if HECI proved that the Neels should have known of their
injuries much earlier.

 HECI, however, has not established conclusively that the Neels should have known of
HECI's suit or their need to sue AOP before they did. HECI must prove that the Neels should have
discovered any negligent misrepresentation by December 6, 1991 or any breach of the implied duty to
protect the leasehold by December 6, 1989. We cannot say as a matter of law that HECI's successful
complaints to the Railroad Commission should have caused the Neels to discover that damage to the value
of the reservoir continued to occur despite the Railroad Commission's actions, that HECI could not and
would not protect the Neels' interests in those reserves, and that the Neels needed to sue to protect their
interests. Even if the Neels should have monitored the Commission's rulings, a fact issue persists on
whether they should have deduced from those rulings the continuing injury to their interests. Nor can we
say that, as a matter of law, HECI's production reports and royalty payments provided an impetus to
discover the breaches of duty. We find no conclusive proof that the Neels should have learned of their
need to sue AOP from a search of the files in the district clerk's office. Cf. Harwell v. State Farm Mut.
Auto. Ins. Co., 896 S.W.2d 170, 174 (Tex. 1995) (insurer's duty to defend insured does not require
insurer to monitor courts to see if insured is sued). The summary-judgment proof regarding the publication
in the county newspaper and the petroleum industry newsletter was similarly inconclusive. Mere assertion
of publication does not prove the absence of an issue of material fact and an entitlement to judgment as a
matter of law that the Neels should have read these articles, much less deduced their meaning. We find
that HECI failed to carry its summary-judgment burden to negate the discovery rule and establish, as a
matter of law, that the Neels should have known that they needed to sue AOP to protect their interests in
the leasehold before May 1993.

 Similarly, we do not find conclusive proof that the Neels should have learned of HECI's
alleged unjust enrichment before December 6, 1991. The existence of the reports, court records, and
newspaper coverage do not establish, as a matter of law, that the Neels should have known that HECI had
collected money from AOP, some of which might equitably belong to the Neels. We sustain points of error
seven and eight.



CONCLUSION


 HECI is bound by the implied covenant of its oil and gas lease with the Neels to take all
action that a reasonably prudent operator would take to protect the leasehold estate. That covenant
requires a reasonably prudent operator who decides to sue neighboring producers for damages resulting
from overproduction to tell the uninformed, unrepresented interest-holders of that decision. We further hold
that the discovery rule applies to this type of case. 

 We conclude that HECI is not entitled to summary judgment against the Neels' claims for
breach of the implied covenant to protect the leasehold, unjust enrichment, and negligent misrepresentation. 
HECI has not disproved the merits of these causes of action or the application of the discovery rule to the
statutes of limitations on them. However, HECI negated the merits of the Neels' breach-of-contract claim
for royalty on lost production.

 We overrule the third motion for rehearing. We affirm the summary judgment against the
claim for royalty on lost production. We reverse the summary judgment against the Neels' remaining claims
and remand for further proceedings.






 

 Bea Ann Smith, Justice 

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: March 27, 1997

Publish
1. We discuss collateral estoppel to explain why the implied duty to protect the leasehold covers the
actions in this suit. HECI argues that, because HECI could not sue on behalf of the Neels, the results of
HECI's suit could not collaterally estop the Neels from pursuing their claims. We disagree. Collateral
estoppel prevents parties and privies of parties from litigating the same issues of fact actually litigated in a
previous suit and essential to the judgment in a prior action between the parties or their privies. Texas Real
Estate Comm'n v. Nagle, 767 S.W.2d 691, 694 (Tex. 1989). The doctrine of collateral estoppel is
intended to "promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent
judgments by precluding the relitigation of issues." Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d
796, 801 (Tex. 1994). Discussing privity in the context of the related concept of res judicata, the supreme
court states that "[p]eople can be in privity in at least three ways: (1) they can control an action even if they
are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be
successors in interest, deriving their claims through a party to the prior action." Amstadt v. U.S. Brass
Corp., 919 S.W.2d 644, 652-53 (Tex. 1996) (emphasis supplied to show inexhaustiveness of list). Privity
does not exist when persons are interested in the same question, but requires an identity of interest in the
legal right actually litigated. Nagle, 767 S.W.2d at 694.

 HECI and the Neels shared an interest in the damaged reservoir. HECI owned the oil in place
underground, but the Neels had a compensable interest in a share of that oil if its production was prevented
by AOP's wrongful production. See Elliff, 210 S.W.2d at 558; Moore, 891 S.W.2d at 678-80. The
reserves were undifferentiated; that is, the reservoir was not carved into zones belonging to the royalty
interest and the lessee. AOP's overproduction therefore inflicted the same degree of damage to the
respective interests of HECI and the Neels. We conclude that this demonstrates the requisite identity of
interests to trigger collateral estoppel on the issue of injury to the reservoir.

 The duty is not satisfied simply because the results of HECI's suit could have assisted the Neels
in their own suit against AOP. HECI's assertion that its victory over AOP was an unmitigated benefit to
the Neels assumes that HECI's suit was prosecuted in the same manner, that the result was as good, and
that the enforcement of the judgment was the same as it would have been had the Neels participated.

2. HECI urges that we cannot address its failure to address the negligent misrepresentation claim at trial
because the text of the Neels' point of error six states only that a fact issue persists regarding the negligent
misrepresentation claim. We must look "not only at the wording of the points of error, but to the argument
under each point to determine as best we can the intent of the party." Holley v. Watts, 629 S.W.2d 694,
696 (Tex.1982); see also Tex. R. Civ. P. 74(p); Bruckner Truck Sales, Inc. v. Farm Credit Leasing
Services Corp., 909 S.W.2d 75, 78 (Tex. App.--Amarillo 1995, no writ). The Neels' sole argument
under point six is that the fact issue persists because HECI's summary judgment proof did not address the
negligent misrepresentation claim. The proof (and the motion) did not address that claim because the
motion was filed before the Neels' amended petition that alleged the negligent misrepresentation claim. We
must address the Neels' argument regarding the failure of HECI to address the negligent misrepresentation
claim at the trial court even though it is not stated explicitly in the point of error.
3.   The supreme court did not reach the secondary, subjective test in Altai or in S.V. v. R.V., 933
S.W.2d 1 (Tex. 1996), because the cases did not satisfy the unifying-principle test. Without the subjective
test, parties whose type of injury satisfied the unifying-principle test could invoke the discovery rule to toll
the statute of limitations even if they actually knew (or should have known) of their injuries immediately.
4.   This holding in no way affects the royalty owners' proper burden to ensure that their working interest
holder is adequately compensating them for production. See Rogers v. Ricane Enters., Inc., 930 S.W.2d
157 (Tex. App.--Amarillo 1996, writ requested); Koch Oil Co. v. Wilbur, 895 S.W.2d 854 (Tex.
App.--Beaumont 1995, writ denied); Harrison v. Bass, 888 S.W.2d 532 (Tex. App.--Corpus Christi
1994, no writ).
5.   Compare with Rogers, 930 S.W.2d at 169 (discovery rule inapplicable to conversion claim by
working interest holder who could see wells producing on property for several years before making claim);
Wilbur, 895 S.W.2d at 863; and Harrison, 888 S.W.2d at 538 (discovery rule inapplicable to loss-of-royalty claim by royalty owners who knew production occurred and knew they were receiving no royalty).



94 (Tex. 1989). The doctrine of collateral estoppel is
intended to "promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent
judgments by precluding the relitigation of issues." Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d
796, 801 (Tex. 1994). Discussing privity in the context of the related concept of res judicata, the supreme
court states that "[p]eople can be in privity in at least three ways: (1) they can control an action even if they
are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be
successors in interest, deriving their claims through a party to the prior action." Amstadt v. U.S. Brass
Corp., 919 S.W.2d 644, 652-53 (Tex. 1996) (emphasis supplied to show inexhaustiveness of list). Privity
does not exist when persons are interested in the same