**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

--------------------------

No. 96-40078

--------------------------

STATE FARM FIRE AND CASUALTY COMPANY,

Plaintiff-Appellant,

versus

VIRGIL L. FULLERTON, ET AL,

Defendants,

W. BRYANT BUCKNER, Individually and as
Representative of the Estate of Karen Jones,
deceased; JACOB JOSEPH ANSLUM, Individually
and as Representative of the Estate of
Karen Jones, deceased; STEPHEN PAUL BUCKNER,
Individually and as Representative of the
Estate of Karen Jones, deceased,

Defendants-Appellees.

--------------------------

Appeal from the United States District Court
For the Eastern District of Texas, Beaumont

--------------------------

July 22, 1997

Before KING and HIGGINBOTHAM, Circuit Judges, and LAKE,[*] District
Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

        This case requires us to surmise how a Texas court would rule

on a question that has received diverse answers in those states

--------------------------

        [*]District Judge of the Southern District of Texas, sitting by
designation.

that have considered it: whether an insured's guilty plea in a prior criminal proceeding can preclude third parties from collecting on the insured's policy. More specifically, we must determine whether Texas law allows the heirs of the victims of a shooting to argue that the shooting was unintentional in spite of the fact that the insured pled guilty to murder.

We hold that the insured's guilty plea satisfies the requisites of issue preclusion. We will reverse the district court's declaration that the policy affords coverage and enter judgment in favor of State Farm.

## I.

On July 7, 1992, Virgil L. Fullerton killed his wife, Artie Harris Fullerton, and his step-daughter, Karen Denby Jones, with a shotgun at their rural residence. Fullerton's precise motive has never come to light, but the family had experienced considerable domestic friction. A number of dangerous incidents convinced him that his wife was trying to kill him. At one point, Artie Fullerton considered filing assault charges against her husband, and after her death her relatives asserted that Fullerton treated her cruelly. Whatever the story behind the slayings, Fullerton did not try to escape justice: he immediately called the sheriff's department and went peaceably to jail.

The state of Texas charged Fullerton with two counts of capital murder. His attorney concluded that Fullerton had a good chance of acquittal if he pled not guilty by reason of insanity. But the attorney was reluctant to adopt that strategy because Fullerton was approaching seventy years of age and was in poor

health.  Unlike an order of commitment to a psychiatric hospital, a conviction on something less than capital murder might allow Fullerton to return home if he entered the last stages of a terminal illness.  Based on this advice, Fullerton pled guilty to the lesser offense of simple murder.  The court sentenced him to life imprisonment.  The judgment of conviction stated that Fullerton was mentally competent, and the issue of his mental competence to form the intent to kill never surfaced before the court.  He remains incarcerated.

The heirs of the two victims brought wrongful death actions against Fullerton in state court.  At the time of the shooting, Virgil and Artie Fullerton held a homeowners' insurance policy that provided coverage for, among other things, personal liability for bodily injuries.  In general, the policy covered injuries "caused by an occurrence" and defined an "occurrence" as "an accident, including exposure to conditions, which results in bodily injury . . . during the policy period."  It excluded, however, injuries "caused intentionally by or at the direction of the insured."  State Farm, the issuer of the policy, provided Fullerton a defense under a reservation of rights and filed this declaratory judgment action in federal court to establish that it has no duty to defend or indemnify Fullerton against the wrongful death claims.  Its complaint listed Fullerton and the representatives of Karen Jones's estate as defendants.[1]  Fullerton himself did not answer the suit.

---

[1] The executrix of Artie Fullerton's estate, Judith A. Pace, was also involved in the case throughout the trial.  State Farm, however, succeeded in its motion for judgment notwithstanding the

3

He stated by affidavit: "I do not believe that insurance coverage exists for these claims because any action taken by me was intentional and intended to cause harm to Artie Harris Fullerton and Karen Denby Jones." The other defendants—Stephen Paul Buckner, Jacob Joseph Anslum, and W. Bryant Buckner (collectively "the Buckners")—moved for appointment of a guardian ad litem on the grounds that Fullerton is not mentally competent. The court granted the motion over State Farm's objection.

State Farm moved for summary judgment on the theories that Fullerton's conviction collaterally estops the Buckners from litigating Fullerton's intent and that the evidence that Fullerton shot his wife and Jones intentionally leaves no genuine issue of material fact. In support, it attached transcripts and other documents from the criminal proceedings. The court denied the motion without explanation. It similarly denied State Farm's motion for judgment as a matter of law at the close of evidence.[2]

At trial, the Buckners presented expert opinion that Fullerton was "severely mentally ill" at the time of the shooting because he was suffering from a "delusional disorder" that caused him to believe that the victims wanted to kill him. The jury credited this testimony and found that the killings were unintentional. State Farm appeals and asserts a number of errors, including

_____

verdict as to Pace because of a policy exclusion for bodily injuries sustained by insureds. Pace has not appealed that ruling.

[2] State Farm also urged a judicial estoppel theory based on Anslum's testimony at the sentencing phase of Fullerton's trial. This theory is not before us on appeal.

evidentiary and instructional errors.  Because we agree with State Farm's assertion that the Buckners are precluded from litigating the issue of Fullerton's intent, we do not reach any other issues presented on appeal.

## II.

Our inquiry into the preclusive effect of Fullerton's guilty plea is governed by Texas law.  Angel v. Bullington, 330 U.S. 183, 191-93 (1947); In the Matter of King, 103 F.3d 17, 19 n.2 (5th Cir. 1997), cert. denied, 65 U.S.L.W. 3818 (U.S. June 16, 1997); Cleckner v. Republic Van & Storage Co., 556 F.2d 766, 768-69 (5th Cir. 1977).  "A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."  Sysco Food Services, Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994).  The third requirement, however, is subject to an important qualification: "[t]o satisfy the requirements of due process, it is only necessary that the party against whom the doctrine is asserted was a party or in privity with a party in the first action."  Id. at 802 (emphasis in original).

The second requirement need not detain us.  Fullerton pled guilty to a violation of Tex. Penal Code § 19.02.  By entering this plea, he admitted that he intended to kill his victims or at least

5

knew that his actions would cause their deaths.[3]  In other words, his convictions were valid because he admitted that the deaths were not accidents.  The convictions are inconsistent both with the Buckners' suggestion that Fullerton's delusions made the shootings acts of self-defense and with their contention that he was legally insane during the incident.  If the criminal proceedings decided anything, it was that the shootings were not "occurrences."  <u>See</u> <u>Dinnery v. State</u>, 592 S.W.2d 343, 352-54 (Tex. Crim. App. 1980) (holding that a judicial confession in a guilty plea is itself sufficient evidence to support the crime charged).

The first and third requisites for issue preclusion require more searching analysis.  We first take up the question of whether

---

[3] Section 19.02(b) reads:

A person commits an offense if he:
> (1) intentionally or knowingly causes the death of an individual;
> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or
> (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Neither serious-bodily-injury murder nor felony murder, described in subsections (2) and (3) of the statute respectively, was at issue in the criminal proceedings, and the Buckners do not suggest otherwise.  According to the indictment and the complaint, which State Farm filed as an exhibit with its motion for summary judgment, Fullerton "knowingly and intentionally cause[d] the death[s]" of his wife and Jones.  Thus, a brief investigation of the pleadings, <u>see</u> <u>Jones v. City of Houston</u>, 907 S.W.2d 871, 874 (Tex. App.—Houston [1st Dist.] 1995, writ denied), reveals that either Fullerton's intent to kill or knowledge that he was killing were essential to his convictions.

6

a guilty plea counts as "full and fair litigation" under Texas law. Then we ask whether the preclusive effect of Fullerton's plea extends to the Buckners; in the traditional language of collateral estoppel, we must determine whether the Buckners are in privity with Fullerton.

III.

If Fullerton had been convicted on the murder counts after a full trial, there would be no question that the jury's factual finding that he killed intentionally would satisfy the full-and-fair-litigation prong of the test for issue preclusion. Texas law collaterally estops an insured who has suffered a conviction for murder before a jury from arguing in a subsequent coverage dispute that the killing was not willful. Francis v. Marshall, 841 S.W.2d 51, 54 (Tex. App.—Houston 1992, no writ) (imposing sanctions for frivolous litigation on an insured who sought to recover benefits after a murder conviction). See also United States v. Thomas, 709 F.2d 968, 972 (5th Cir. 1983) ("Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action.").

Unfortunately, Texas courts have not decided whether a guilty plea produces similarly preclusive effects in subsequent coverage litigation. We are thus in the uncomfortable position of speculating how a Texas court might answer a close question of first impression. We may consult a variety of sources in making an

7

*Erie*-guess: <u>dicta</u> in Texas court decisions, the general rule on the issue, and the rules in other states that Texas might look to, as well as treatises and law journals. <u>Hill v. London, Stetelman, & Kirkwood, Inc.</u>, 906 F.2d 204, 207 (5th Cir. 1990). After reviewing case law from other jurisdictions, which is divided roughly evenly on the question, we have concluded that Texas would most likely follow the rule that a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime and thus that a Texas court would preclude Fullerton from contesting State Farm's assertion that he acted intentionally.

A.

A survey of the preclusive effects of guilty pleas in other jurisdictions gives us little guidance. Even if Texas wanted to follow the general rule, it would be unable to identify a majority view with any confidence.

Some courts treat a conviction pursuant to a guilty plea in the same way they would treat a conviction imposed by a jury after a full-blown trial. An especially thorough and well-reasoned justification for this approach appears in <u>Ideal Mutual Ins. Co. v. Winker</u>, 319 N.W.2d 289 (Iowa 1982). In <u>Winker</u>, an off-duty deputy sheriff shot and killed his girlfriend and pled guilty to second-degree murder. The administrator of the girlfriend's estate brought a wrongful death action against the deputy, who was insured under a law enforcement officers' comprehensive liability policy. The insurer in turn brought a declaratory judgment action to establish that it had no duty to defend the deputy because of an

8

exclusion for injuries "resulting from a criminal act." The deputy admitted that the plea could be used as evidence of his intent, but he insisted that he should be allowed to present countervailing evidence that the shooting was not criminal because it was the result of a nervous breakdown.

Overruling a prior case, Book v. Datema, 131 N.W.2d 470 (1964), the Iowa Supreme Court prohibited "relitigation concerning an essential element of a crime when the accused has tendered a guilty plea, which necessarily admits the elements of the crime, and the court has ascertained that a factual basis exists for the plea and accepts it." Winker, 319 N.W.2d at 295. The court considered the apparently contrary rule announced in comment b to § 85 of the Restatement (Second) of Judgments (1982), which indicates that preclusion "does not apply where the criminal judgment was based on a plea of nolo contendere or a plea of guilty." According to the court, this technical rule does little work in light of the statement several lines later that

> [a] defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense. However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

Unable to find any cases utilizing the American Law Institute's notion of "evidentiary estoppel," the court "conclude[d] that the conclusive effect given to a guilty plea . . . is founded on issue preclusion rather than estoppel." Winker, 319 N.W.2d at 293-94 (citing especially Prosise v. Haring, 667 F.2d 1133 (4th Cir.

9

1981), aff'd, 462 U.S. 306, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983)).

The same result obtained in State Mutual Ins. Co. v. Bragg, 589 A.2d 35 (Me. 1991), in which a man pled guilty to murdering his wife and son and attempting to murder his daughter. When he entered the pleas, he was the defendant in a wrongful death suit brought by the personal representative of his deceased wife. The court held that the guilty pleas precluded any recovery from the man's insurer or the personal representative because he had a "full and fair opportunity to litigate in the prior suit." Id. at 37 (quoting Hossler v. Barry, 403 A.2d 762, 769 (Me. 1979)). It explained that "murder and attempted murder are crimes in which the intent to cause, or the expectation of causing injury inheres." Id.

Similarly, in State Farm Fire & Cas. Co. v. Sallak, 914 P.2d 697 (Or. Ct. App.), rev. denied, 920 P.2d 551 (Or. 1996), the court held that a man who pled guilty to resisting arrest and assaulting a police officer could not argue in a declaratory judgment action that his insurer should provide coverage because the injuries he inflicted were not "expected or intended." Like the Winker and Bragg courts, the Sallak court found it especially significant that the criminal proceedings included "a colloquy with [the judge] to satisfy the court that the plea was voluntarily and intelligently made." Id. at 700. "Because the factual basis rule requires that the trial court be convinced that the plea is founded on fact, we conclude that acceptance of [the insured's] plea is the equivalent

10

of a judicial determination of each of the material elements of [his] crime and satisfies the 'actually litigated' requirement of issue preclusion." Id. See also Bower v. O'Hara, 759 F.2d 1117, 1128 (3d Cir. 1985) (Sloviter, J., dissenting) ("[T]here seems to be almost no deviation from the general principle that when a defendant has pled guilty in a federal criminal action the defendant will be estopped in a subsequent civil suit by or against the United States government or its agencies from contesting issues encompassed by the prior guilty plea."); United States v. $31,697.59 Cash, 665 F.2d 903, 906 (9th Cir. 1982) (precluding a litigant who pled guilty to a federal crime from relitigating facts in a subsequent forfeiture hearing, in spite of any failure to ensure that the guilty plea had a factual basis); Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger, 934 P.2d 909, 911 (Colo. Ct. App. 1997) (applying issue preclusion to an insured who pled guilty to sexual assault because "intent is an issue that, when finally decided in a previous criminal prosecution, cannot be relitigated so as to avoid the intentional acts exclusion of an insurance policy"); State Farm Fire & Cas. Co. v. Groshek, 411 N.W.2d 480, 484 (Mich. Ct. App. 1987) ("[A]n insured's plea of guilty to a crime involving intentional conduct . . . dispels any triable factual issue regarding the insured's intention or expectation to cause injury to the victim."); State v. Gonzalez, 641 A.2d 1060, 1061 (N.J. Super. Ct. App. Div. 1994) ("[O]ne who has been convicted of a crime, whether by way of trial or a plea of guilty, should not be permitted to re-litigate, in another forum, the fact

11

of his guilt."), aff'd, 667 A.2d 684 (N.J. 1995); Merchants Mut. Ins. Co. v. Arzillo, 472 N.Y.S.2d 97 (N.Y. App. Div. 1984) (holding that the recent expansion of collateral estoppel warrants applying it even when a litigant has previously entered an Alford-type plea and insisted at sentencing that he was framed); Commercial Union Ins. Co. v. Mauldin, 303 S.E.2d 214, 217 (N.C. Ct. App. 1983) ("[The insured's] guilty plea to second degree murder was an admission that he had the general intent to do the act, and it excluded him from coverage under the insurance policy."). See also In the Matter of Nassau Ins. Co., 577 N.E.2d 1039 (N.Y. 1991) (applying issue preclusion to third-party claimants who sought to contest the intent of an insured who waived his right to a jury trial on a murder charge and was convicted of manslaughter after raising only the successful defense of extreme emotional disturbance).

But some courts refuse to treat guilty pleas as fully litigated matters for the purposes of collateral estoppel. The Supreme Judicial Court of Massachusetts, for example, has distinguished convictions that resulted from full-blown trials from convictions that resulted from guilty pleas and has held that collateral estoppel does not apply in the latter situation. The court explained that allowing re-litigation of facts underlying guilty pleas would compromise neither of the central goals of issue preclusion: efficiency and fairness.

> When a defendant pleads guilty, waiving his right to a trial by jury, scarce judicial and prosecutorial resources are conserved. While the judge taking the plea must satisfy himself that there is a factual basis

12

> for a charge, he need not find that the defendant actually committed the crime to which he is pleading guilty. Cf. North Carolina v. Alford, 400 U.S. 25, 37–38 & n.10, 91 S. Ct. 160, 167 & n.10, 27 L. Ed. 2d 162 (1970). Furthermore, because there have been no findings, a conviction after a plea of guilty does not present the possibility of inconsistent factual determinations. For collateral estoppel purposes, those factors justify treating a conviction after a guilty plea differently from a conviction after a trial.

Aetna Cas. & Sur. Co. v. Niziolek, 481 N.E.2d 1356, 1364 (Mass. 1985). The number of states agreeing with Massachusetts law rivals the number that disagrees. See, e.g., Rawling v. City of New Haven, 537 A.2d 439, 445 (Conn. 1988) (stating in dicta that "[a]s a general rule, a criminal judgment based on a plea of nolo contendere or a plea of guilty has no preclusive effect in a subsequent civil action"); Continental Cas. Co. v. Maguire, 471 P.2d 636 (Colo. Ct. App. 1970) (concluding that an insured was insane and thus acted unintentionally in spite of a prior plea of guilty to simple assault); Teitelbaum Furs, Inc. v. Dominion Ins. Co., 375 P.2d 439, 441 (Cal. 1962) (in bank) ("Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice . . . combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." (dicta)), cert. denied, 372 U.S. 966, 83 S. Ct. 1091, 10 L. Ed. 2d 130 (1963); Brohawn v. Transamerica Ins. Co., 347 A.2d 842, 848 (Md. 1975) ("A plea of guilty to a criminal charge . . . may be rebutted or explained in the subsequent civil case in which it is admitted."); Glens Falls

13

Group Ins. Corp. v. Hoium, 200 N.W.2d 189, 192 (Minn. 1972) (allowing an insured to enter evidence of his reasons for pleading guilty to criminal assault); Prudential Property & Cas. Ins. Co. v. Kollar, 578 A.2d 1238, 1240 (N.J. Super. Ct. App. Div. 1990) ("We have applied collateral estoppel only where the conviction definitively and unambiguously established the nature of the insured's intent and where such conviction was the result of a trial, not a plea."); Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 954 (Pa. Super. Ct. 1992) (noting that because of a unilateral plea bargain, the insured's "intent was never fully, fairly and definitively litigated"), appeal denied, 637 A.2d 290 (Pa. 1993); Safeco Ins. Co. v. McGrath, 708 P.2d 657, 660 (Wash. Ct. App. 1985) (refusing to apply issue preclusion because of the "powerful, coercive forces" confronting an insured who insists that he acted in self-defense and chose to enter an Alford-type plea to assault charges), rev. denied, 105 Wash.2d 1004 (1986). Although many of these opinions cite section 85 of the Restatement (Second) of Judgments, they do not conduct the Winker court's careful inquiry into the Restatement's notion of estoppel.

A Texas court could approach this body of law in a variety of ways. The fact that the record supports Fullerton's claim that he had a viable insanity defense distinguishes this case from many of the decisions applying collateral estoppel. In Winker, for example, the court noted that the insured "[a]pparently . . . decided that the chances of prevailing on an insanity defense were slight given the medical experts' opinions." 319 N.W.2d at 297.

14

Many of these cases emphasize the statutory duty of state judges to ensure that the plea rests on a factual basis before accepting it. See, e.g., Bragg, 589 A.2d at 37; Sallak, 914 P.2d at 700. See also Gonzalez, 641 A.2d at 1063 (rejecting the California and Maryland approaches in part because those states, unlike New Jersey, "permit a defendant to plead guilty and yet assert innocence"). Texas statutes do not prohibit Alford-type pleas; they require only that "[n]o plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." See TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West 1989); Allen v. State, 827 S.W.2d 69, 70 (Tex. App.—Houston [1st Dist.] 1992, no writ) (explaining that a court may allow a criminal defendant to withdraw exculpatory evidence and enter a guilty plea). The judge who accepted Fullerton's plea did not engage him in a discussion of the facts of the case; the court fulfilled its duty to confirm that Fullerton was mentally competent and that his plea was free and voluntary, but it did not prod the possibility that Fullerton had a viable defense. Because Fullerton's plea did not lead to an airing of the facts, a Texas court might conclude that the reasoning in the second line of cases should govern and might hold that the plea did not qualify as full and fair litigation of Fullerton's intent.

On the other hand, Fullerton's affidavit acknowledging responsibility and his decision not to respond to State Farm's declaratory judgment act suggest that a belief in his own innocence

15

did not color his guilty plea.  If the acknowledgment of guilt was not an _Alford_-type plea, a Texas court might find it highly reliable.  The uncontradicted circumstances do not suggest self-defense, and Fullerton's behavior immediately after the shootings is not characteristic of someone who, "as a result of severe mental disease or defect, did not know that his conduct was wrong."  TEX. PENAL CODE § 8.01 (West 1994).  See also Love v. State, 909 S.W.2d 930, 943 (Tex. App.—El Paso 1995, writ ref'd) (affirming a jury finding of sanity, in spite of a history of mental illness, where a lucid defendant shot family members without provocation).

In short, the unsettled law in other jurisdictions leaves us unenlightened on how Texas would resolve the question of full and fair litigation.  Perhaps the more recent decisions tend to favor treating a guilty plea as the equivalent of a conviction after a trial.  But nothing approaching a consensus has emerged. Predicting how a Texas court might act requires us to glean what few hints we can from the tenor of relevant Texas opinions.

B.

We ground our conclusion that Texas would regard Fullerton's plea as full and fair litigation on three observations.  First, Texas has not hesitated to give default civil judgments preclusive effect, in spite of the cursory nature of the adjudication leading to those judgments.  Second, language in a 1949 Texas Supreme Court case suggests a willingness to give guilty pleas to murder charges heavy weight in later civil proceedings.  And finally, Texas courts have indicated that Texas issue-preclusion rules are virtually

16

identical to the issue-preclusion rules followed in federal courts, which routinely give guilty pleas preclusive effect.

Texas courts ask not whether the issue to be precluded could have been litigated, but whether it was actually litigated — whether it was "adequately deliberated and firm." Mower v. Boyer, 811 S.W.2d 560, 563 (Tex. 1991). Three factors are especially important in analyzing the question of full and fair litigation: "1) whether the parties were fully heard, 2) whether the court supported its decision with a reasoned opinion, and 3) whether the decision was subject to appeal or was in fact reviewed on appeal." Rexrode v. Bazar, 937 S.W.2d 614, 617 (Tex. App.—Amarillo 1997, no writ). These factors are in keeping with the rule that a Mary Carter agreement can cast doubt on the fairness of an earlier judgment and can give a trial court reason to use its discretion to re-open issues because of misgivings about the "quality or extensiveness of the procedures" in the earlier suit. See Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 7 (Tex. 1986) (quoting Restatement (Second) of Judgments § 28(3) (1982)).

These general principles do not counsel against our finding that Fullerton's criminal proceedings included a full and fair airing of his intent. The judge gave Fullerton a full hearing; indeed, he did just what Fullerton asked him to do, which was accept his guilty plea. There was no need for a reasoned opinion. And Fullerton had the right to appeal his conviction. Unlike the Mary Carter agreement in Scurlock Oil, Fullerton's plea did not skew the proceedings against him. He cannot take advantage of

17

abstract legal statements designed to protect parties "whose procedural predicament is not of their own making." Trapnell, 890 S.W.2d at 805.

We are reluctant to place much weight on the fact that, for Texas civil litigants, "[a]n agreed judgment . . . has the same degree of finality and binding force as one rendered by a court at the conclusion of adversary proceedings." Forbis v. Trinity Universal Ins. Co., 833 S.W.2d 316, 319 (Tex. App.—Fort Worth 1992, writ dism'd) (citing Barrientes v. Harlandale Indep. School Dist., 764 S.W.2d 28, 29 (Tex. App.—San Antonio 1989, writ denied)). The consequences of a capital murder conviction are difficult to compare to the consequences of losing a civil lawsuit. Consequently, it is difficult to map the reasons for entering a guilty plea onto the reasons for settling with an opponent in a civil lawsuit. Unlike a civil defendant, Fullerton could not threaten the state with a counterclaim or bring in a third-party defendant. The differences between plea agreements and civil settlements make us unsure whether Texas courts would give them the same preclusive effects.

Rather than ground our Erie-guess on generalities, we turn to two specific Texas opinions. First, the case of Mendez v. Haynes Brinkley & Co., 705 S.W.2d 242 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.), suggests that Texas courts do not understand "full and fair" litigation to require an active courtroom confrontation. The owners of an apartment building paid $358 to an insurance recording agent, who took responsibility for insuring the building

18

against fire. When the building burned down and the owners discovered they were uninsured, they sued the recording agent and Haynes Brinkley, the general insurance agent with whom the recording agent was supposed to have done business. The recording agent did not answer the suit, and the owners dismissed Haynes Brinkley in order to obtain a final default judgment against the recording agent. When the owners brought a second suit against Haynes Brinkley, they were faced with the obstacle of issue preclusion, for the default judgment stated that the recording agent never contacted Haynes Brinkley, which meant that Haynes Brinkley could not be liable. Although the court of appeals did not discuss the full-and-fair-litigation requirement, it did not hesitate to hold that the owners could not prevail because "the judgment states unequivocally that the premises were not insured." Id. at 246.[4]

---

[4] We do not agree with the interpretation of Mendez offered in In re Turner, 144 B.R. 47 (E.D. Tex. Bankr. 1992). The Turner court noted that the recording agent in Mendez gave a deposition and thus inferred that the parties actually agreed to the first judgment. Id. at 52. As an agreed settlement, the judgment in Mendez would fit into the rule announced in comment e to § 27 of the Restatement (Second) of Judgments: "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated . . . [unless] the parties have entered an agreement manifesting such an intention." The court in Turner followed In re Stowell, 113 B.R. 322 (W.D. Tex. Bankr. 1990), and held that Texas courts would follow § 27 of the Restatement in spite of Mendez.

The passing reference to the recording agent's deposition in Mendez does not indicate that he consented to the judgment against him. Even if he did consent, that fact played no role in the court's application of issue preclusion. See also Greater Houston Transp. Co. v. Wilson, 725 S.W.2d 427, 430 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (giving preclusive effect to a default judgment entered as a sanction for failing to appear for depositions).

Mendez involved factors not present in this case. The building owners, in contrast to Fullerton, initiated the first suit themselves. More importantly, they did not face the agonizing decision of whether to preserve the possibility of winning a subsequent suit at the cost of risking a capital murder conviction. Nevertheless, both the default judgment in Mendez and the conviction in this case were the results of one-sided litigation. In both, a court entered judgments that flowed from the failure of one side to assert any defense. This treatment of default judgments suggests that in Texas "full and fair litigation" need not involve contested issues. See also Rexrode, 937 S.W.2d at 617 ("For the purposes of collateral estoppel, an issue was 'actually litigated' when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined." (citing Van Dyke v. Boswell, O'Toole, Davis & Pickering, 697 S.W.2d 381, 384 (Tex. 1985))).

Although several decades old, at least one other Texas case shows an inclination to credit the facts underlying guilty pleas. In Greer v. Franklin Life Ins. Co., 221 S.W.2d 857 (Tex. 1949), a woman stabbed and killed her husband and pled guilty to "murder without malice." Although she was a beneficiary under her husband's insurance policy, a Texas statute barred recovery where a beneficiary willfully caused the insured's death. Members of the husband's family brought suit against the wife and the insurer, and the wife in turn asserted her claim to proceeds. At trial, the

20

wife admitted that the killing was not in self-defense.  The Texas

Supreme Court held that she could not recover on the policy.

> Whatever be the rule as to admissibility or effect in
> a civil suit such as this of a criminal conviction of
> the crime in issue, we think the wholly unqualified
> admission of a plea of guilty with the other evidence
> above mentioned and in the absence of contrary
> evidence, established intent and illegality as a matter
> of law.

221 S.W.2d at 860.

The _Greer_ court's explanation of why the wife was ineligible

for benefits contains an ambiguity.  We are not certain whether the

court meant to rely on the plea as especially convincing evidence

or as a prior preclusive judgment.  The references to

"admissibility" and "other evidence" suggest that the case does not

turn on issue preclusion.  But the passage is consistent with the

notion that especially reliable guilty pleas automatically

establish certain facts "as a matter of law."  Even if we read

_Greer_'s holding in terms of preclusion, it involves defensive,

rather than offensive, issue preclusion.  Nevertheless, it is a

clue that Texas law takes seriously guilty pleas to murder when

they bear on a subsequent coverage dispute.

Texas courts have indicated that there is "little difference"

between Texas and federal rules of issue preclusion.  _Trapnell_, 890

S.W.2d at 801 n.7; _Upjohn Co. v. Freeman_, 906 S.W.2d 92, 101 n.7

(Tex. App.—Dallas 1995, no writ).  We thus take comfort in the fact

that our case law has invoked a plea of guilty as a ground for

collateral estoppel.  In _Brazzell v. Adams_, 493 F.2d 489 (5th Cir.

1974), a party who pled guilty to selling heroin sought damages

21

from state officials under § 1983 on an entrapment theory. We asserted that "the general rule is that collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea." Id. at 490. Other circuits agree. See, e.g., Fontneau v. United States, 654 F.2d 8, 10 (1st Cir. 1981) (barring a party who pled guilty to federal tax evasion from re-litigating the issue of fraud in a subsequent civil penalty proceeding); Ivers v. United States, 581 F.2d 1362, 1367 (9th Cir. 1978) ("While a non-frivolous argument to the contrary might well have been made to a finder of fact had Ivers chosen to proceed to trial, we must take his plea of guilty to be an admission of each and every essential element of the [federal] crime charged, including the element of knowledge and willfulness."); Nathan v. Tenna Corp., 560 F.2d 761, 763 (7th Cir. 1977) ("Nathan is estopped by his guilty plea to federal mail fraud charges from denying that his participation in the commission-splitting scheme involved illegal conduct.").

We conclude that a Texas court would treat Fullerton's guilty plea as full and fair litigation of his intent to kill his wife and step-daughter.

IV.

Fullerton is content to go without coverage. This case requires us to determine whether his plea counts as full and fair litigation not for him, but for the Buckners, who hope to receive proceeds under Fullerton's policy. Although we recognize the dangers of formalism tied up in the word "privity," see Wright,

22

Miller & Cooper, 18 Federal Practice & Procedure § 4448 (1981), we follow Texas courts in continuing to use that label in our inquiry into whether Texas law allows State Farm to extend the preclusive effect of the murder conviction from Fullerton to the heirs of Fullerton's victims.

"[P]rivity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts." Benson v. Wanda Petroleum Co., 468 S.W.2d 361, 363 (Tex. 1971). But privity does exist if one party "deriv[es its] claims through a party to the prior action." Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 653 (Tex. 1996); Neel v. HECI Exploration Co., 942 S.W.2d 212, 217 n.1 (Tex. App.—Austin 1997, no writ). See also CLS Associates v. A___ B___, 762 S.W.2d 221, 224 (Tex. App.—Dallas 1988, no writ) ("It is sufficient that the party in the second suit be a successor-in-interest to the party in the first suit.").[5]

State Farm's assertion of privity would fail if the Buckners could assert their rights directly against State Farm. A New York court, for example, has refused to find privity between co-insured spouses when one spouse has pled guilty to an intentional crime. Fernandez v. Cigna Property & Cas. Ins. Co., 590 N.Y.S.2d 925 (App.

---

[5] We do not discern any difference in Texas courts' understanding of privity in the contexts of claim preclusion and issue preclusion. Neel, for example, concerned issue preclusion and applied privity rules delineated in Amstadt without remarking that that case concerned claim preclusion. Similarly, CLS Associates cited Benson to support its privity analysis in spite of the fact that claim preclusion was at stake in CLS Associates and issue preclusion was at stake in Benson.

Div. 1992). The court distinguished the rights of insured parties from the rights of uninsured victims such as the Buckners, who under New York statute derive their right to sue the insurer from the rights of the insured. See D'Arata v. New York Central Mut. Fire Ins. Co., 564 N.E.2d 634, 637 (N.Y. 1990) ("Plaintiff, by proceeding directly against [the insurer], does so as subrogee of the insured's rights and is subject to whatever rules of estoppel would apply to the insured.").

The Iowa Supreme Court has held that a direct action statute defeats privity between an insured who pleads guilty to a criminal offense and the victim of the crime. In AID Ins. Co. v. Chrest, 336 N.W.2d 437 (Iowa 1983), an insurer argued that a police officer who was shot by its insured could not bring suit after the insured pled guilty to assault with intent to kill. But Iowa's direct action statute "gives the insured person an interest in the liability insurance policy adverse to both the insurer and insured at the time of the injury." Id. at 440 (quoting Farm & City Ins. Co. v. Coover, 225 N.W.2d 335, 337 (Iowa 1975)). The purpose of the direct action statute, according to the court, is to prevent agreements between the insurer and the insured from compromising a victim's ability to force the insurer to pay for the harm caused by the insured. By making a victim's rights against an insurer direct rather than derivative, Iowa law prevents the insurer from using the insured's admission as a defense.

Because the Buckners are not themselves insureds, and because Texas has not enacted a "direct action statute," see Jilani v.

24

*Jilani*, 767 S.W.2d 671, 675-76 (Tex. 1988) (Mauzy, J., concurring), the Buckners must win a judgment against Fullerton before claiming entitlement to insurance proceeds. Fullerton's policy states explicitly that "no action with respect to [personal liability] can be brought against [State Farm] until the obligation of the insured has been determined by a final judgment or agreement." When an insurance contract contains a no-action clause, "a third party's right of action against the insurer does not arise until he has secured such an agreement or a judgment against the insured." *Great American Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969). *See also* *Angus Chemical Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138 (Tex. 1997) (per curiam). In other words, State Farm's duty is to pay its insured; third parties can recover proceeds under the policy only insofar as their rights derive from Fullerton's right to recover proceeds.

Thus, although Texas courts have not yet decided specifically whether tort plaintiffs who seek insurance funds are in privity with an insured who pleads guilty to murder, we hold that under Texas law the Buckners are in privity with Fullerton because of the derivative nature of their recovery under the policy.[6]

---

[6] We do not understand *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 773-74 (Tex. 1983), as following a contrary rule. In *Childress*, the insurer obtained a declaratory judgment that its policy did not cover the insured. When the insurer sought to use this judgment to preclude a suit by third parties claiming under the policy, the Texas Supreme Court held that the third parties were not in privity with the insured and thus that issue preclusion did not apply. The basis for the holding, however was that the insurer failed to join the third parties as required by the Uniform Declaratory Judgment Act, which states that "no declaration shall prejudice the rights of persons

25

This result places Texas among the bulk of other jurisdictions that have considered the question. See, e.g., Aetna Cas. & Sur. Co. v. Jones, 596 A.2d 414, 421, 425 (Conn. 1991) (holding that "[w]hen the victim of an insured defendant derives her rights to collect insurance proceeds directly from the rights of the insured defendant," they are in privity by virtue of "shar[ing] a legal interest"); Tradewind Ins. Co. v. Stout, ___ P.2d ___, ___, 1997 WL 222335, at *9 (Haw. Ct. App.) (giving a criminal conviction preclusive effect against the insured's victim because "any 'right' which [the victim] has to the proceeds of the insurance policy derive[s] solely from [the insured's] right to coverage under the policy"), cert. denied, 937 P.2d 922 (Haw. 1997); Safeco Ins. Co. of America v. Yon, 796 P.2d 1040, 1044 (Idaho Ct. App. 1990) ("[T]he wrongful-death claimants' rights are only as good as the rights that [the convicted insured] can assert against Safeco under the insurance contract."); State Mut. Ins. Co. v. Bragg, 589 A.2d 35 (Me. 1991) (affirming a declaratory judgment that an insured had no duty to defend where its insured murdered family members and was sued by the victims' personal representative); Aetna Life & Cas. Ins. Co. v. Johnson, 673 P.2d 1277, 1280-81 (Mont. 1984) (giving a criminal conviction preclusive effect against a third party because

___

not parties to the proceeding." Id. at 774; Tex. Rev. Civ. Stat. Ann. art. 2524-1 § 11 (Vernon 1965) (current version codified at Tex. Civ. Prac. & Rem. Code § 37.006(a) (West 1997)). Unlike Childress, Fullerton's case does not present an insurer that failed to obtain declaratory relief against all interested parties. Cf. Opheim v. Interamerican Ins. Exchange, 430 N.W.2d 118, 121 (Iowa 1988) (distinguishing Childress based on Iowa's declaratory judgment act, which does not require joinder of all interested parties).

the third party's rights derived from the convicted insured's insurance and because of an identity of interest at the time of the criminal trial); New Jersey Manufacturers Ins. Co. v. Brower, 391 A.2d 923, 926 (N.J. Super. Ct. App. Div. 1978) (finding privity in part because the victim "stood in the shoes" of the insured for the purposes of recovering proceeds); In the Matter of Nassau Ins. Co., 577 N.E.2d 1039, 1040 (N.Y. 1991) (following D'Arata's holding that criminal convictions bar third parties from claiming insurance proceeds); State Farm Fire & Cas. Co. v. Reuter, 700 P.2d 236, 241 (Or. 1985) (holding that the victim of a sexual assault was in privity with her assailant because of "her status as a claimant and potential judgment creditor" of the convicted insured).

Decisions to the contrary are both less numerous and less recent. See Clemmer v. Hartford Ins. Co., 587 P.2d 1098, 1103 (Cal. 1978) (refusing to apply issue preclusion to the holders of a wrongful death judgment where the convicted insured may have withdrawn a plea of insanity for strategic reasons); Massachusetts Property Ins. Underwriting Assoc. v. Norrington, 481 N.E.2d 1364, 1367-68 (Mass. 1985) ("Allowing the application of issue preclusion against the insured, but not against the injured person, does no violence to the substantive principle that an injured party succeeds only to the insured's rights against the insurer."). See also Prudential Property & Cas. Ins. Co. v. Kollar, 578 A.2d 1238, 1241 (N.J. Super. Ct. App. Div. 1990) ("[A]n innocent third-party victim . . . should not be estopped from effectively recovering

against a defendant and his insurer when the defendant, for whatever reason, elects to enter a plea of guilty." (<u>dicta</u>)).

V.

Texas courts have also recognized that at bottom issue preclusion is driven by equitable principles. Therefore, they reserve the discretion to decline to apply it when the results would be unfair. <u>Scurlock Oil Co. v. Smithwick</u>, 724 S.W.2d 1, 7 (Tex. 1986). The relevant fairness factors derive from <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 330-31 (1979):

> 1. Whether the use of collateral estoppel will reward a plaintiff who could have been joined in the earlier suit but chose to "wait and see." . . .
>
> 2. Whether the defendant in the first suit had the incentive to litigate that suit fully and vigorously. . . .
>
> 3. Whether the second suit will afford the defendant procedural opportunities available in the first suit that could cause a different result. . . .
>
> 4. Whether the judgment in the first suit is inconsistent with any other earlier decision. . . .

*Finger v. Southern Refrig. Serv.*, 881 S.W. 2d 890, 896 (Tex. App. - Houston [1st Dist.] 1994, *writ denied*). Of these, only the second suggests that preclusion might be unfair. We have already decided that the first proceeding included a full and fair litigation of Fullerton's intent. The state's agreement to forego the death penalty gave Fullerton less incentive to litigate vigorously. But he still had a strong incentive to defend himself insofar as the facts permitted. The second of these four factors may not be as decisive as it could be, but we do not think that would convince a

28

Texas court to exercise its discretion to refuse to apply issue preclusion.

The Texas Supreme Court has isolated three goals of issue preclusion: the conservation of judicial resources, the protection of defendants from repetitive lawsuits, and the prevention of inconsistent judgments. Sysco Food Services, Inc. v. Trapnell, 890 S.W.2d 796, 803-04 (Tex. 1994). See also Finger, 881 S.W.2d at 894-95 (citing Benson v. Wanda Petroleum Co., 468 S.W.2d 361, 363 (Tex. 1971)). Although the second of these is not relevant, the first and third counsel in favor of giving Fullerton's plea preclusive effect. Treating the question of intent as resolved will not only cut short declaratory judgment suits such as this one; it will also expedite the adjudication of victims' suits against an insured who has admitted his responsibility for a criminal act. As the results in the trial court here demonstrate, the danger of inconsistent judgments looms large. We recognize that criminal defendants sometimes enter guilty pleas for reasons other than the truth of the charges against them. But it is disquieting when a judicial system tolerates the continued incarceration of those defendants and at the same time awards civil damages based on findings that those defendants did not commit all the elements of the crimes for which they are being punished. Texas issue-preclusion policies indicate that we should avoid that result if possible.

Although the Buckners do not raise the issue, we recognize that the Due Process Clause places limits on the use of offensive,

29

non-mutual issue preclusion. "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." Parklane Hosiery, 439 U.S. at 327 n.7 (citing Blonder-Tongue Laboratories, Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971)). We cannot say, however, that the operation of Texas law in this case intrudes on the Buckners' due process rights. Perhaps there could be circumstances in which state law definitions of "full and fair opportunity to litigate" and "privity," see Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 338 (5th Cir. 1982), lead to results that are constitutionally intolerable. But this is not such a case. The Buckners' inability to recover insurance proceeds does not deprive them of a legal remedy. They can still win damages from Fullerton, although Fullerton may not be able to satisfy the judgment fully. Within the structure of Texas insurance law, Fullerton's plea did not deprive the Buckners of their day in court, for they never had a legal right to assert against State Farm. Finding a violation of due process here would mean requiring Texas to alter an insurance-entitlement system that has been in place for decades in many states. We are not prepared to say that Texas's efforts to protect insurance companies from suits by third parties interferes with third parties' rights to assert claims to proceeds.

The judgment in favor of the Buckners is REVERSED, and judgment is RENDERED in favor of State Farm.

30