**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-11582.

DATA SPECIALTIES, INC., Plaintiff-Appellee,

v.

TRANSCONTINENTAL INSURANCE COMPANY, Defendant-Appellant.

Oct. 27, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, DUHÉ and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Defendant-Appellant Transcontinental Insurance Company ("Transcontinental") appeals the district court's grant of summary judgment for Plaintiff-Appellee Data Specialities, Inc. ("DSI"). The district court concluded that Transcontinental was obligated to provide coverage to and reimburse its insured DSI for construction expenses under its standard commercial general liability policy ("CGL"). This case requires us to determine how a Texas court would construe the scope of coverage of a CGL policy when the insured is not at fault but seeks to recover expenses incurred in completing its contractual obligations, an apparent res nova issue in that state. We conclude that there is no coverage under a CGL policy when the insured is not at fault and thus reverse the district court.

I.

DSI is an electrical contractor. Transcontinental is DSI's general liability insurer. The Haggar Clothing Company hired DSI to reconstruct the electrical system at its damaged manufacturing facility in Texas.

While DSI and representatives of TU Electric were testing the electrical switchboard DSI had installed as part of its subcontract, a short circuit resulted in an explosion. The switchboard and other property in the Haggar plant were damaged. Investigators determined that a defective General Electric circuit breaker caused the explosion.

Following the explosion, DSI completed its contract by hiring a local electrical contractor, McBride Electric, to repair and rebuild portions of the electrical system. DSI paid McBride Electric for its work. DSI incurred additional overhead expenses for its supervision of the McBride work. DSI sought reimbursement for these expenses under its CGL policy. After investigating the explosion, Transcontinental determined there was no coverage under the CGL policy and denied the balance of the claim.

DSI sued seeking a determination of its rights under the CGL policy and a finding that Transcontinental breached the policy by not reimbursing DSI the expense it incurred to complete its contract with Haggar. Transcontinental denied coverage on two grounds: (1) that DSI was seeking to recover its own out-of-pocket expenses arising from the explosion, and (2) no one claimed that DSI was potentially at fault for the explosion. Transcontinental also pled DSI's breach of the "no-voluntary payment" provision of

2

the policy.[1]

Both parties moved for summary judgment. Both motions were granted in part and denied in part.[2] The district court concluded that the policy covered DSI's claim. Transcontinental appealed.

DSI argues that it was contractually obligated to repair the damage at the plant and, because there was "property damage," the policy affords coverage. Transcontinental argues that the DSI expenditure was made merely to preserve DSI's reputation and good business relationship with Haggar. We need not consider these arguments because we conclude that Transcontinental's policy provides coverage only for damages which the insured is legally obligated to pay as a result of its tortious conduct. Whether DSI had a contractual obligation to complete additional work following the explosion or breached the no-voluntary payment clause are moot issues in light of the lack of coverage.

## II.

We review the district court's grant of summary judgment *de novo*. *Davis v. Illinois Cent. R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the

---

[1]The policy contained two conditions to coverage: (1) "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without out consent" and (2) "No person or organization has a right under this Coverage Part: ... b. To sue us on this Coverage Part unless all of its terms have been fully complied with."

[2]DSI did not appeal the partial granting of Transcontinental's summary judgment motion that the cost of replacing the damaged electrical switchboard itself was excluded from policy coverage.

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The underlying facts of this action are not disputed. Therefore we are left with determining whether the district court erred, as a matter of law, in interpreting the terms of the insurance policy. *See Guaranty Nat. Ins. Co. v. North River Ins. Co.,* 909 F.2d 133, 135 (5th Cir.1990) (holding that the "[i]nterpretation of an insurance policy is a question of law.").

### III.

Texas law clearly states that for an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy. *Employers Casualty Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988)(overruled on other grounds by *State Farm Fire and Casualty v. Gandy,* 925 S.W.2d 696 (Tex.1996)). The insurer's duty to indemnify, or provide coverage, is triggered by the actual facts establishing liability in the underlying suit. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965). DSI must prove that the money it spent hiring McBride and overseeing its work is reimbursable under the CGL policy. Both parties stipulated that the explosion occurred during the policy period, was caused by a faulty switch (circuit breaker), and was not the result of any DSI negligence.

What is not clear under Texas law is whether a standard CGL policy covers a contractual obligation triggered by an event for which the insured was not at fault. We must determine how a Texas court might answer this *res nova* issue. To do so, we must

4

interpret, as a Texas court would, the following language in Transcontinental's CGL policy: "We will pay those sums that the insured becomes *legally obligated to pay as damages* because of "bodily injury' or "property damage' to which this insurance applies." (emphasis supplied).

Sitting as an *Erie* court, we may consult a variety of sources: *dicta* in Texas court decisions, the general rule on the issue, and the rules in other states that Texas might look to, as well as treatises and law journals. *State Farm Fire and Casualty Co. v. Fullerton,* 118 F.3d 374, 378 (5th Cir.1997), *citing Hill v. London, Stetelman, & Kirkwood, Inc.,* 906 F.2d 204, 207 (5th Cir.1990). After reviewing these sources, we conclude that a Texas court would rule that the CGL policy language "legally obligated to pay as damages" applies only to tort-based obligations.

Although Texas courts have not directly ruled on the meaning of the phrase in question, they have discussed the purpose of standard liability insurance and CGL insurance. In *Brightwell v. Rabeck,* 430 S.W.2d 252, 255 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.), the court stated that the basic premise behind liability insurance is that the insurance company accepts "the responsibility to discharge the insured's obligation, if any, arising through negligent tort committed by the latter." In reviewing a CGL policy in a factually similar case,[3] a Texas court

---

[3]Charter had contracted to repair a shopping center roof owned by Weingarten Realty. A wind storm damaged the roof and Weingarten requested payment from Charter for the damages. Charter paid the requested sum to preserve its good business relationship with Weingarten. There was no suit and no settlement agreement. The

noted that a CGL policy is intended to cover claims made against the insured by third parties. *Charter Roofing Co., Inc. v. Tri-State Insurance Co.,* 841 S.W.2d 903 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The Texas Supreme Court has indirectly addressed the purpose of a CGL policy. The court pointed out that the "insurer does not pay because (the assured) is alleged to be legally responsible but because (the assured) has been adjudicated to be legally responsible." *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965). It did not, however, define "legally responsible." Most recently, the Texas high court in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139 (Tex.1997), noted that under a trucker's liability policy the insurer's duty to defend[4] rests upon allegations in the suit filed against the insured, the policy language, and the requirement of a causal connection between the accident and the insured's action. Thus, Texas courts seem to say that an insurer is obligated under a CGL or a standard liability policy when the insured's conduct is tortious in nature, a claim has been made against the insured for this tortious activity, and there has been an adjudication of the insured's liability.

The parties stipulated that DSI was not negligent. Haggar

---

third party, Weingarten, never filed a claim. Only Charter demanded payment from Tri-State.

[4]The duty to defend is broader than the obligation to pay or provide coverage. *Colony Ins. Co. v. H.R.K., Inc.* 728 S.W.2d 848, 850 (Tex.App.1987) For DSI to successfully seek repayment, it must at least meet the same basic requirements that are required when an insured urges a duty to defend.

made no claim against DSI as a result of the explosion. The only claim presented was DSI's demand for reimbursement from Transcontinental for the costs DSI incurred in completing its construction contract following the accident. No suit was filed nor did Haggar and DSI enter a settlement agreement. Under the Texas cases discussing liability insurance, DSI's claim for coverage under its CGL policy would fail.

For this Court to determine how a Texas court would rule on this issue, we must also look to other sources to glean the meaning of "legally obligated to pay as damages." Other states have more clearly described the purpose of a CGL policy and the context in which the phrase "legally obligated to pay as damages" is to be read. The Ninth Circuit, in reviewing California law on this point, noted that state courts uniformly interpret such language to cover tort but not contract liability. *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361 (9th Cir.1991). In *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.,* 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (Cal.App. 2 Dist.1979), the state appellate court stated that "legally obligated to pay as damages" is synonymous with "damages for a liability imposed by law." It recognized that the latter phrase has been uniformly interpreted as referring to a liability arising *ex delicto* as distinguished from *ex contractu. Citing Ritchie v. Anchor Casualty Co.,* 135 Cal.App.2d 245, 286 P.2d 1000.

The Wyoming Supreme Court held that CGL's policy coverage encompassed only liability for tortious conduct and did not extend

7

to liability arising from a breach of contract. *Action Ads, Inc. v. Great Am. Ins. Co.,* 685 P.2d 42 (Wyo.1984). When an employee was injured and discovered he had no medical insurance coverage, he sued his employer for breach of contract. His employment contract required the employer to provide medical insurance. The employer, Action Ads, contacted its liability insurer, Great American, and requested that the insurer defend the action and pay any resulting judgment in favor of the employee. The court concluded that the coverage clause, identical to the one at issue here, encompassed liability that the law imposes on all insureds for their tortious conduct and not liability that a particular insured may choose to assume pursuant to contract. *Id.* 685 P.2d at 45.

The Alaska Supreme Court specifically addressed the meaning of the phrase in question in a CGL policy in *Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska,* 648 P.2d 1008, 1012 (Alaska 1982). The court held that "legally obligated to pay as damages ..." refers to liability imposed by law for torts and not to damages for breach of contract, except contracts for indemnity. The only exception to this general rule, the court noted, arises when the contract breach itself results in injury to persons or property. *Id.*

Illinois law, as interpreted by the Federal district court for the Northern District of Illinois, emphasizes the difference between coverage for tort liability and contract liability, with only the former being covered in a CGL policy. In *Aetna Cas. & Sur. v. Spancrete of Ill., Inc.,* 726 F.Supp. 204 (N.D.Ill.1989),

8

the insurer sought a declaratory judgment that it was not required to defend or indemnify a general contractor's breach of contract action when its insured subcontractor failed to name the general contractor as an additional insured under its CGL policies. The court agreed, noting that Aetna had to indemnify Spancrete for damages that it became legally obligated to pay as a result of bodily injury or property damage. It found that the CGL policy did not provide coverage for damages resulting from a breach of contract. *Id.* at 206.

If Texas courts look to the law of other states, we conclude they would find that the insured must be liable for damages arising from its own tortious conduct to trigger liability insurance coverage. A breach of contract action does not fall within CGL coverage.

In an *Erie* analysis, courts also rely on treatises to elicit a general rule on the issue. Various insurance commentators provide a uniform reading of the phrase "legally obligated to pay as damages." For example, Windt notes that many courts have held that the phrase refers to liability imposed by law for torts and not to damages for breach of contract.[5] Another commentator, Long, further describes the phrase in question in a general liability insurance policy as one that "does not recompense the insured for his own loss." He states that "liability insurance protects the insured against damages which he may be liable to pay by virtue of

---

[5]ALLAN D. WINDT, 2 INSURANCE CLAIMS & DISPUTE at 244(3d ed.1995).

his own actions."[6]    In discussing liability insurance, an authoritative publication explains that coverage exists when "the insured's liability is attributable to his own negligence...."[7]

Commentators in a more specialized liability insurance area, the CGL policy, clearly recognize that there must be underlying tortious conduct by the insured for coverage to exist.    In describing the scope of a CGL policy, the *Construction Industry Handbook* notes that to cover most of the liability risks arising out of its operations, a contractor purchases commercial general liability insurance (known before 1986 as comprehensive general liability).  It states that the CGL policy is essentially designed to cover the contractor for its tort liability.  It protects the contractor primarily against its own negligence, usually limiting liability coverage only to the construction period.[8]  Section 11.3 of the *Handbook* notes that an insurer is not obligated to pay the sums the insured becomes legally liable to pay as damages unless the underlying requirement is met:  the damages must be caused by the insured's negligence.

Others analyzing the phrase at issue in a CGL policy find it has the same meaning as a "liability imposed by law."  This phrase, according to the commentators, refers to the liability of an

---

[6]ROWLAND N. LONG, THE LAW OF LIABILITY INSURANCE § 1.01[1], AT 1-3 (1992).

[7]7A John Alan Appleman, *Insurance Law and Practice* § 4493 at 56 (1979).

[8]DEUTSCH, KERRIGAN & STILES, CONSTRUCTION INDUSTRY INSURANCE HANDBOOK, § 11.1 (1991).

insured arising from a breach of a duty that exists independent of any contractual relationship between the insured and the injured party. They emphasize that the breach of a duty imposed by law gives rise to an action sounding in tort.[9]

In light of the interpretation of the phrase "legally obligated to pay as damages" given by courts of other states and by insurance treatises, the necessary requirement for coverage is that the insured's tortious conduct must have caused the damages. We conclude that Texas courts would look first for the existence of this requirement in determining coverage. The answer to the coverage question under Transcontinental's CGL policy is simple—there is no coverage. Both parties stipulated that DSI was not at fault. The damages DSI claims it has suffered in additional expenditures to complete its contract with Haggar are not those suffered by a third party. Haggar made no third party claims against DSI. The CGL policy does not afford coverage in this situation.

IV.

What DSI seeks to do is to convert the Transcontinental CGL policy into a builder's risk policy. The *Construction Industry Insurance Handbook* distinguishes between liability and builders' risk insurance.[10] Normally a party will have two primary insurance needs: insurance against loss of his property and insurance

---

[9]Barry R. Ostrager and Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 7.01 (8th ed.1995).

[10]DEUTSCH, KERRIGAN & STILES, CONSTRUCTION INDUSTRY INSURANCE HANDBOOK, § 9.6.

11

against his liability for the claims of others.  When a contractor negligently causes an accident damaging his own property and that of others, he needs two separate policies to collect for his lost property and to be protected against claims of others whose property he damaged.  The CGL policy covers the contractor for its tort liability.[11]  Builders' risk insurance, however, provides property insurance for a project under construction.[12]  This coverage reimburses the owner, or any party with an insurable interest such as a mortgage holder, for the accidental loss, damage, or destruction of the property, regardless of fault.[13] "Builders' risk is not permanent insurance.  It is usually issued to insure a building "only during the course of the construction'" period and perhaps for a short additional period after the construction is completed.[14]

Given our resolution of the foregoing issues we need not consider whether there was a contractual obligation for DSI to repair the damage nor whether DSI breached the "no voluntary payment" provision of the CGL policy.

Accordingly, we reverse the decision of the district court and render judgment in favor of Transcontinental.

REVERSED and RENDERED.

---

[11] *Id.* at § 11.1.

[12] *Id.* at § 9.4.

[13] *Id.* at § 9.3.

[14] Brunswick G. Deutsch and Ralph L. Kaskell, Jr., *Builders' Risk Insurance,* CONSTRUCTION LAWYER, April 1989, at 8.